BOSTON SAFE DEPOSIT AND TRUST COMPANY & another, executors, *vs.* COMMISSIONER OF REVENUE.

Worcester. December 7, 1983. — December 28, 1983.

Present: GRANT, DREBEN, & WARNER, JJ.

*Taxation,* Succession tax, Appellate Tax Board, Value. *Value.*

The record in an action commenced in the Probate Court against the Commissioner of Revenue seeking a reduction in the valuation of certain stock made for inheritance tax purposes by the Appellate Tax Board did not support the plaintiffs' contention that in determining the value of the stock the Board had misconceived its function and had proceeded on the erroneous premise that the determination of value which the Commissioner had made was presumed to be correct. [327-329]

In appraising the value of certain stock for inheritance tax purposes, the Appellate Tax Board did not err in basing its determination of value on a recorded sale of 100 shares of the stock on the day following the death of the plaintiffs' testatrix and in rejecting, as unsupported by the evidence, the plaintiffs' contention that an attempt to market as large a block of stock as the 18,565 shares in question would have reduced the selling price, where it was clear from the testimony of the expert witness for the plaintiffs that the effect of the sale of a large block of stock was only one of the factors considered by him in determining his total discount per share and where the witness did not identify the portion of that discount attributable to the effect on the market of such a sale. [329-330]

A statement in a decision of the Appellate Tax Board appraising the value of certain stock for inheritance tax purposes, that no evidence had been presented by the executors of the estate in question "with respect to those matters generally probative of value in this type of case, namely . . . financial statements and earnings reports," did not, in the circumstances, require the conclusion that the Board had ignored or overlooked certain exhibits presented by the executors containing information entitled "Consolidated Income Account" and "Consolidated Balance Sheet." [330-331]

CIVIL ACTION commenced in the Worcester Division of the Probate and Family Court Department on November 24, 1980.

Following the decision of this court reported in 13 Mass. App. Ct. 492 (1982), the case was heard by *Conlin*, J.

*Alexander Whiteside* (*Howard S. Whiteside* with him) for the plaintiffs.

*Kathleen M. Bowers*, Assistant Attorney General, for the Commissioner of Revenue.

GRANT, J.  The prior proceedings in this case are set out in *Boston Safe Deposit & Trust Co.* v. *Commissioner of Revenue*, 13 Mass. App. Ct. 492 (1982).  After remand, the case came on for hearing in the Probate Court on the question whether that court should accept the valuation of the stock which was stated in the return which had been made by the Appellate Tax Board (board) under G. L. c. 65, § 26, as amended through St. 1961, c. 469, § 3.[1]  A probate judge found no error of law in the board's findings and appraisal (see 13 Mass. App. Ct. at 495-496) and accepted the return. The plaintiff executors appealed.

1. The actual decision of the board contains no determination of value and reads simply, "Decision for the appellee," which is the language traditionally employed by the board whenever it has not been persuaded that the administrative valuation which has been challenged by a taxpayer is excessive.  The board stated in its "Findings of Fact and Report" that "the board found that the appellants failed to sustain their burden of proof that the valuation of the shares of stock by the State Tax Commission was excessive and therefore a finding for the appellee was entered."  In its "Opinion" the board said that "[b]ased upon appellants evidence the Board is of the opinion that they failed to meet their qualitative and quantitative burden of proof."  The board concluded, "It is well established that the burden of proof,

---

[1] The pertinent language of that section read (and, with an exception not here material, still reads) as follows: "Said board shall appraise such property as has been valued by the commissioner at its value as of the date of death of the decedent, shall give notice of its decision to the commission and the appellant, and shall make return thereof to the probate court. Such return, when accepted by the court, shall be final except that any party aggrieved by such appraisal shall have an appeal on matters of law."

both qualitative and quantitative, in any matter before this board lies with the appellant. Where the appellant fails to sustain the burden of proof, as in this instance as to the overvaluation of the shares of corporate stock, the board must enter a finding for the appellee." In its return the board recited that it had "appraised the property of the decedent consisting of 18,565 shares of White Consolidated Industries, Inc. $3.00 preferred Series A stock and has determined its value as of the date of her death to be $765,806.25." That figure coincided with the valuation determined by the Commissioner of Corporations and Taxation (commissioner) which had given rise to the appeal to the board.

All this leads the plaintiffs to argue that the board has ignored the "appraisal" language of G. L. c. 65, § 26 (note 1, *supra*), has misconceived its function, and has proceeded on an erroneous premise, namely, that the determination of value which the commissioner had made was presumed to be correct. The argument overlooks the statement in the board's "Opinion" that "[w]e must determine the value by the exercise of critical judgment through the application of a method which is fair and proper under all the facts and circumstances of the case." More important, the argument overlooks the last sentence of G. L. c. 65, § 25, as amended by St. 1971, c. 555, § 58, which provides in pertinent part that the commissioner's "determination [of value] shall be final as to all property valued . . . unless the value so determined shall be reduced or altered as provided in . . . section twenty-six."[2] Nowhere did the board rule that the evidence introduced by the plaintiffs was insufficient to warrant a finding of a lower valuation than that determined by the commissioner. In our view, the language of the board which

[2] The history of that sentence is to be found in the following: St. 1907, c. 563, § 19; St. 1909, c. 490, Part IV, § 19; G. L. c. 65, § 25 (1921); St. 1924, c. 300, § 3; St. 1930, c. 416, § 30; G. L. (Ter. Ed.) c. 65, § 25; St. 1939, c. 494, § 1; St. 1954, c. 572, § 1; St. 1961, c. 469, § 2. See *Attorney Gen.* v. *Skehill,* 217 Mass. 364, 366 (1914); *Attorney Gen.* v. *Roche,* 219 Mass. 601, 602 (1914); *Attorney Gen.* v. *Laycock,* 221 Mass. 146, 149 (1915); *Cabot* v. *Commissioner of Corps. & Taxn.,* 267 Mass. 338, 339-340 (1929).

has already been quoted amounts to nothing more than an amalgam of (a) recognition and restatement of the § 25 allocation to the taxpayer of the burden of proof on the question of overvaluation[3] and (b) the explanation for its decision which is traditionally employed by a court or administrative tribunal which has not been persuaded by the evidence offered by the party having the burden of proof.

We do not see that the plaintiffs have suffered any harm in this aspect of the case except that which necessarily flows from the board's indulging its prerogative not to believe the plaintiffs' only expert witness. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 469-473 (1981); *Foxboro Associates* v. *Assessors of Foxborough*, 385 Mass. 679, 690 (1982).

2. At the time of her death on March 10, 1974, the decedent owned 18,565, or approximately 8.5%, of the total number of the outstanding shares of the class of stock in question. Only 9,700 shares were traded on the New York Stock Exchange during the six-month period prior to the date of death, and only 9,400 shares were traded during the six-month period after that date. The commissioner's valuation, which the Appellate Tax Board refused to alter, was $41.25 per share, which was based on the recorded sale of 100 shares at $41.20 on the day following the date of death. Two of the plaintiffs' contentions at the hearing before the board were that the market was too thin to reflect the true value of the stock and that it would have been impossible to sell 18,565 shares on the date of death except at a substantial discount from the market value which would flow from any attempt to market a large block of stock at one time.

Both theses were advocated by the plaintiffs' expert, who valued the stock at "[a]bout $34 a share." The witness offered no explanation of how much of the difference between his $34.00 and the market's $41.20 was attributable to "blockage." On cross-examination the witness testified that

---

[3] The plaintiffs seem to have missed the significance of what we said of the burden of proof in the earlier case. See 13 Mass. App. Ct. at 493 & n.3.

"anyone that bought that stock at around the date of death for $41.00 . . . was paying too much for the stock." He also testified that on December 12, 1975, 8,000 of the shares in the estate were sold to the issuer for sinking fund purposes at either $.50 or $1.00 per share below its closing price on that day.

The penultimate paragraph of the board's "Opinion" reads as follows: "Appellants additionally raised the argument of 'blockage,' wherein the sale of such a large block of stock at one time would depress the value below that for which small blocks would be selling. No evidence was admitted and therefore it need not be addressed." The plaintiffs point to this language and urge error arising out of the board's ignoring or overlooking the evidence which has just been summarized. We do not agree. It is clear from the testimony of the plaintiffs' expert that blockage was only one of the factors considered by him in determining his total discount of $7.20 per share and, as has already been pointed out, the witness did not identify the portion of that discount attributable to blockage. Nor was there any effort to translate the discount of $.50 or $1.00 per share encountered on the sale of 8,000 shares some twenty-one months after the date of death into what might have been a proper discount on the sale of 18,565 shares on the date of death. In the circumstances, we read the challenged language as nothing more than a comment on the absence of any evidence from which the board could measure the blockage discount sought by the plaintiffs. That comment was both correct and innocuous.

3. Finally, the plaintiffs argue another question of similar genesis. By agreement of counsel there was submitted to the board as an exhibit a copy of a page from some unidentified edition of Moody's Industrial Manual which contained, among many other things, something entitled "Consolidated Income Account" and something else entitled "Consolidated Balance Sheet" of the issuer for its three fiscal years ending December 31, 1974. The former carried a line denominated "Net income." The board's "Opinion" contains the follow-

ing: "No evidence was presented with respect to those matters generally probative of value in this type of case, namely general background, success within the industry, management, future prospects, *financial statements* and *earnings reports* [emphasis supplied]. Additionally these matters were missing regarding the comparable stock issues." The plaintiffs point to the italicized language and again urge error arising out of the board's ignoring or overlooking some of the evidence that was before it. We reject the contention again.

Not once in the course of his testimony did the plaintiffs' witness refer to the exhibit by name or to any of the specific earnings figures set out in the exhibit. His only reference to the earnings of the issuer was in the context of comparing them with the earnings of other identified issuers which, as the board remarked, were not put in evidence. The earnings figures of the issuer were there for the board to see, but it was given no other information which might have made those figures significant or even useful. For all that appears in his testimony, there was nothing in any of the balance sheets which affected or even entered into the opinion of value which was proffered by the plaintiffs' witness. In the circumstances, we see no occasion for remanding the case to the board for consideration of the evidence disclosed in any of the financial statements.

The judgment which was entered following the court's acceptance of the board's return is affirmed.

*So ordered.*